UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

JOHN JOHNSON, JR.,

                Petitioner,

v.                                                                    No.  1:22-CV-00117-H

DIRECTOR, TDCJ-CID,

                Respondent.

## OPINION AND ORDER

Petitioner John Johnson, Jr., a self-represented state prisoner, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging his state-court conviction for continuous sexual assault of a child and his resulting 35-year sentence. Dkt. No. 1. He asserts that his trial counsel was ineffective for not challenging or "striking for cause an admittedly biased juror" and for not objecting to the prosecutor's repeated mischaracterization of the law. *See id.* at 6. He seeks a new trial. Respondent filed an amended answer with copies of Petitioner's relevant state-court records. Dkt. Nos. 18, 14, 15. Respondent argues that the petition is without merit because the Texas Court of Criminal Appeals' (TCCA) rejection of his ineffective-assistance claims is consistent with Supreme Court precedent and clearly established federal law. Dkt. No. 18. Petitioner replied. Dkt. No. 20. As explained below, the Court finds that Petitioner has failed to overcome the difficult, deferential standard of 28 U.S.C. § 2254(d). Thus, the petition must be denied and dismissed with prejudice.

## 1.    Background

Petitioner challenges his conviction and 35-year prison sentence out of the 104th District Court of Taylor County, Texas. In cause number 21463-B, styled *State of Texas v.*

*John Johnson, Jr.*, Petitioner was charged with continuous sexual abuse of a child and prohibited sexual conduct.  *See* Dkt. Nos. 14-6 at 5–6; 18-2 at 6–7.  He pled not guilty to continuous sexual abuse of a child but pled guilty to prohibited sexual conduct.  *See* Dkt. Nos. 14-9 at 8; 18-4 at 3.  On June 18, 2019, a jury found him guilty on both charges.  S*ee* Dkt. Nos. 14-10 at 125–26; 18-5 at 69–70.  And following the punishment phase on June 19, 2019, the Court sentenced Plaintiff to 35 years in the Texas Department of Criminal Justice (TDCJ).  Dkt. Nos. 14-11 at 36; 18-2 at 28–36; 18-6.

A.     **Facts**

Respondent provided the state appellate court's detailed summary of the facts of this case, and the Court finds it unnecessary to fully repeat it here.  *See* Dkt. No. 18 at 3–7.  But the Court finds a shortened summary would be helpful for the purpose of this order.  The victims in this case are Petitioner's daughter, M.J., and her daughter, I.J.—a female child born to M.J. after Petitioner impregnated her.  M.J. testified that when she was 12 years old, Petitioner started looking through the window of her room and bought her an iPod in return for her putting her legs on him.  Then, when she was a 13-year-old seventh grader, Petitioner began to touch her in a sexual way "probably every other day."  *See* Dkt. No. 18 at 3.  She testified that the sexual abuse stopped when she was 17 years old, but Petitioner abused her one more time when she was 19—from which she became pregnant and later gave birth to I.J.  A forensic DNA analyst testified that DNA tests showed that Petitioner is likely the father of I.J.

M.J. testified about later witnessing her then four-year old daughter, I.J., touching herself, and when asked, I.J. explaining, "well, Pawpaw does it."  *Id*. at 4.  M.J. told her brother Elijah about the accusation and then called Petitioner, who denied the allegation.  M.J. also testified that Petitioner told I.J. that if she said he touched her, he would go to jail

2

and she wouldn't see him anymore.  M.J. took I.J. to the hospital, where she reported the facts to Officer Chris Volirakis with the Abilene Police Department (APD).  A sexual assault nurse examiner noted some redness inside I.J.'s labia minora but no acute injuries. The testimony at trial indicated that acute injuries are not typically found in cases involving the type of contact with I.J. here.

M.J. testified that another brother, Zachary, punched her during a confrontation about a Facebook post that she made about the incident.  She then called the police and reported it.  In the course of the APD's investigation, Detective Robert Collins, an investigator with the APD Special Victims Unit, discovered that M.J. had filed two prior reports against Petitioner.  The first was in 2009 when M.J. was 13 years old, and the second was a year later.  Both were sexual in nature, but at some point M.J. recanted the allegations.  M.J. testified at trial that she recanted because her mother and Petitioner told her she would have to go to court and everyone would find out.  She was also accused by an aunt and uncle of lying and making it all up.  When Collins asked M.J. about whether the accusations in the prior reports were true, she became upset and confirmed the truth of the reports.

Two of M.J.'s brothers, John Wayne Johnson and Isaiah Johnson, testified at trial. John Wayne testified that when M.J. was 13 years old, he caught Petitioner trying to sneak through the window of M.J.'s room and that on another occasion, M.J. texted him from her room, writing "He's going to try to rape me," asking John Wayne to please come in and that she had left the door unlocked for him.  *See id.* at 6.  John Wayne then witnessed his father climbing out through the window of his own room, and when John Wayne went to M.J.'s room, he saw Petitioner climbing through the window and M.J. screaming and crying, saying he's trying to do it to her again and to please call the cops.  Isaiah testified

3

that on a different occasion, M.J. sent him a text in which she wrote that Petitioner was taking her out of class, and she asked him to call the cops "because I think he's going to do that again." *Id.* Both brothers testified that Petitioner once took them on a drive so that he could apologize to them, telling them "I never meant to bring y'all shame." *Id.* Isaiah also testified that at some point when M.J. was 13 years old, their mother told him, John Wayne, and Zachary that Petitioner was sexually assaulting M.J.

### B.    Procedural History

Petitioner filed an appeal, but the Eleventh Court of Appeals affirmed the judgment of the trial court in an unpublished opinion. *See* Dkt. Nos. 14-4; 18-6. Then, after obtaining an extension, Petitioner filed a Petition for Discretionary Review (PDR), but the TCCA refused it. *See* Dkt. Nos. 14-14; 18-7. Petitioner filed a petition for writ of certiorari, *see* Dkt. No. 14-22, but the Supreme Court denied it. *See* Dkt. Nos. 14-23;18-8.

Petitioner then filed a state application for writ of habeas corpus, challenging his conviction on the grounds raised in this petition, as well one more not raised here. *See* Dkt. No. 14-17 at 51–90; 18-2 at 52–91. The TCCA denied the application without written order on April 6, 2022. *See* Dkt. No. 14-18.

Petitioner filed his federal petition on July 25, 2022.[1] The Court understands Petitioner to challenge his conviction and sentence based on two grounds of ineffective assistance of counsel:

> 1)    He was denied effective assistance of trial counsel when his attorney failed to strike for cause an "admittedly biased juror," named Stacie Lopez, who had knowledge of the case because of her job as a journalist and knew several of the witnesses because her husband was a police officer, in violation of his Sixth and Fourteenth Amendment rights; and

---

[1] *See Spotville v. Cain,* 149 F.3d 374, 378 (5th Cir. 1998) (providing that a prisoner's habeas petition is deemed to be filed when he delivers the papers to prison authorities for mailing).

2) He was denied effective assistance of trial counsel when his attorney failed to object to the prosecution's repeated mischaracterization of the law.  Specifically, Petitioner notes instances where the prosecutor misstated the age requirement as "14 or younger" when the relevant statute describes a child as "younger than 14 years."  Texas Penal Code § 21.02(b)(2).

Respondent argues that Petitioner's grounds are wholly meritless because the TCCA's denial of Petitioner's ineffective-assistance-of-counsel claims is consistent with Supreme Court precedent under *Strickland v. Washington*, 466 U.S. 668 (1984), because counsel's performance was neither deficient nor prejudicial.  First, Respondent argues that Petitioner was not deprived of constitutionally effective counsel when trial counsel accepted Lopez onto the jury.  Respondent notes that Petitioner ignores the portions of Lopez's testimony that do not benefit him and infers bias from her career as a journalist, marriage to a police officer, and familiarity with people involved in the case.  But Respondent argues that the record undermines Petitioner's version of Lopez's voir dire and underscores trial counsel's strategic decision to seat her—that is, because her testimony revealed a potential for bias in both directions.  Specifically, Respondent points to Lopez's testimony that she may not be a good juror for the case because she was good friends with Petitioner's son, Elijah.  She went on to testify that she knew when Petitioner was arrested, that her husband was a police officer, that she knew the investigators in the case, that she worked as a journalist and that one of Petitioner's other sons had threatened the news station following a report of Petitioner's arrest—a threat which resulted in a police report.  In other words, Respondent argues that her testimony revealed a potential for bias in both directions—in that she might favor the prosecution based on her marriage, career, and familiarity with the facts and investigators of the case, but also that she might favor Petitioner based on her friendship with his son.

Second, Respondent contends that trial counsel did not err when he failed to object to the State's misstatement of the law as to the victim's age. Respondent notes that although trial counsel missed the opportunity to correct the misstatement in some instances, the record demonstrates that the trial judge prompted the prosecutor to correct his misstatement in one instance, and then the jury was properly charged on the continuous sexual abuse offense, including the victim-age requirement. And the record shows that the jury did give consideration to the age requirement in its deliberations, as evidenced by the jury's note to the trial judge seeking to have certain testimony read back indicating the victim's age when the abuse began. In short, Respondent contends that trial counsel's performance was not deficient, and Petitioner was not prejudiced on this ground. Thus, Respondent argues that Petitioner is not entitled to federal habeas relief and urges the Court to deny the petition and dismiss this civil action with prejudice.

In reply, Petitioner emphasizes his claims that the challenged juror was biased, noting her statement during voir dire that she believed she would be an inappropriate juror. He contends that that statement amounted to an unambiguous admission to her bias in favor of law enforcement. And he asserts that it was unreasonable for trial counsel to consider the juror's friendship with her son to amount to any kind of relationship that could favor Petitioner. Petitioner also argues that because the state trial court never held any hearing or filed findings of fact, conclusions of law, or made recommendations to the TCCA, no state court has reviewed the constitutional claims he presented, which is why he presented his claims in this Court.

## 2.    Legal Standard

Section 2254 provides federal courts with an important but limited opportunity to review a state prisoner's conviction and sentence. *See Harrington v. Richter*, 562 U.S. 86, 103

6

(2011) (explaining that the statute is "designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions").  This statute, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), creates a "highly deferential standard for evaluating state-court rulings, . . . which demands that state-court decisions be given the benefit of the doubt."  *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam) (internal quotation marks omitted).

The basic structure of the federal habeas statute is "designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." *Richter*, 562 U.S. at 103.  First, the statute requires that a habeas petitioner exhaust his claims in state court.  28 U.S.C. § 2254(b).  If the state court dismisses the claim on procedural grounds, then the claim is barred from federal review unless the petitioner shows cause and prejudice.  *Richter*, 562 U.S. at 103.  And if the state court denies the claim on the merits, then AEDPA's relitigation bar applies.  *Lucio v. Lumpkin*, 987 F.3d 451, 464–65 (5th Cir. 2021).

## A.    AEDPA's Relitigation Bar

Once a state a state court has rejected a claim on the merits, a federal court may grant relief on that claim only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d); *Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019).  And "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."  *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

7

A state-court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004). A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000); *see also Pierre v. Vannoy*, 891 F.3d 224, 227 (5th Cir. 2018) (explaining that a petitioner's lack of "Supreme Court precedent to support" a ground for habeas relief "ends [his] case" as to that ground).

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Federal habeas relief is precluded even when the state court's factual determination is debatable. *Id.* at 303. State-court factual determinations are entitled to a "presumption of correctness" that a petitioner may rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). This "deference extends not only to express findings of fact, but to the implicit findings of the state court." *Ford v. Davis*, 910 F.3d 232, 234–35 (5th Cir. 2018).

State courts need not provide reasons for their decisions, and even summary denials of relief are entitled to substantial deference. *Richter*, 562 U.S. at 100–01. Of course, when the state high court "explains its decision on the merits in a reasoned opinion," then the federal court's review is straightforward—it "simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). But when reviewing a summary denial, "the federal court should 'look

8

through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Id.* If the lower court's rationale is reasonable, the federal court must "presume that the unexplained decision adopted the same reasoning." *Id.* This presumption may be rebutted, however, by evidence that the summary decision "relied or most likely did rely on different grounds." *Id.* at 125–26. And when the lower state court decision is unreasonable, then it is more likely that the state high court's single-word decision rests on alternative grounds. *Id.* at 132.

In short, a reviewing court cannot "overlook[] arguments that would otherwise justify the state court's result." *Richter*, 562 U.S. at 102. A federal habeas court "must determine what arguments or theories supported, or . . . could have supported, the state court's decision" before considering "whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent" with Supreme Court precedent. *Id.* "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Moreover, "federal habeas relief does not lie for errors of state law," and "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991); *West v. Johnson,* 92 F.3d 1385, 1404 (5th Cir. 1996). AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Federal habeas review is reserved only as a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error

9

correction through appeal." *Richter*, 562 U.S. at 102–03. This standard is intentionally "difficult to meet." *Id.*

Finally, federal habeas review is limited "to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011). In short, to overcome AEDPA's highly deferential, difficult standard, a petitioner "must show, based on the state-court record alone, that any argument or theory the state habeas court could have relied on to deny . . . relief was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court." *Evans v. Davis*, 875 F.3d 210, 217 (5th Cir. 2017).

## B.    Ineffective Assistance of Counsel

The well-known standard applicable to ineffective-assistance-of-counsel claims is explained in *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Under the two-pronged *Strickland* test, a petitioner must show that counsel's performance was both deficient and prejudicial. *Id.* at 687. An attorney's performance was deficient if the attorney made errors so serious that the attorney was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment to the United States Constitution. *Id.* That is, counsel's performance must have fallen below the standards of reasonably competent representation as determined by the norms of the profession.

A reviewing court's scrutiny of trial counsel's performance is highly deferential, with a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance. *Id.* at 689. A strong presumption exists "that trial counsel rendered adequate assistance and that the challenged conduct was reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (citing *Strickland*, 466 U.S. at 694).

Additionally, a petitioner must show that counsel's deficient performance prejudiced the defense. To establish this prong, a petitioner must show that counsel's errors were so serious as to deprive petitioner of a fair trial. *Strickland*, 466 U.S. at 687. Specifically, to prove prejudice, a petitioner must show "(1) there is a reasonable probability that, but for counsel's unprofessional errors, the ultimate result of the proceeding would have been different . . . and (2) counsel's deficient performance rendered the trial fundamentally unfair." *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). This is a heavy burden that requires a "substantial," and not just a "conceivable," likelihood of a different result. *Richter*, 562 U.S. at 112; *see also Pinholster*, 563 U.S. at 189.

In the context of Section 2254(d), the deferential standard that must be given to counsel's representation must also be considered in tandem with the deference that must be accorded state-court decisions, which has been called "doubly" deferential. *Richter*, 562 U.S. at 105. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*. Additionally, if a petitioner fails to show either the deficiency or prejudice prong of the *Strickland* test, then the Court need not consider the other prong. *Strickland,* 466 U.S. at 697.

**3.    Discussion**

The Court thoroughly examined Petitioner's pleadings, Respondent's answer, the relevant state court records, and the applicable law. The Court finds that an evidentiary hearing is not necessary to resolve the instant petition. *See Young v. Herring*, 938 F.2d 543,

11

560 n.12 (5th Cir. 1991) ("[A] petitioner need not receive an evidentiary hearing if it would

not develop material facts relevant to the constitutionality of his conviction.").  Respondent

has adequately addressed each of Petitioner's grounds, and the Court finds it unnecessary to

repeat its arguments as to ground two.  *See* Dkt. No. 18 at 12–23.  As explained below and

based on the facts and law set forth in Respondent's answer, the Court denies Petitioner's

claims as meritless and because he has not overcome AEDPA's relitigation bar.

### A.    Petitioner's ground one fails to demonstrate that seating Stacie Lopez on the jury amounted to ineffective assistance of counsel.

#### i.    Petitioner's arguments

As mentioned above, Petitioner asserts that his trial counsel was ineffective for

failing to strike Stacie Lopez during voir dire.  Based upon Lopez's answers to questioning

during voir dire, Petitioner maintains that Lopez was "admittedly biased" in the

prosecution's favor.  Petitioner points specifically to Lopez's answers when asked if she was

familiar with anyone familiar with Petitioner or anyone close to him, and she admitted that

she was friends with his son, Elijah.  She also acknowledged that she was married to a local

police officer, works as a journalist, and knew all the investigators involved in this case.  She

went on to explain that in her job at a news station, she was on the staff that worked on a

story about Petitioner's case, for which one of Petitioner's other sons threatened the news

station, resulting in a police report.  Petitioner argues that she demonstrated a clear bias in

favor of the prosecution when she stated that she believed she would be an inappropriate

juror.  In other words, Petitioner complains that because Lopez never directly stated that

she would be a fair and impartial juror or would render a verdict based on the evidence, and

because she stated that she thought she would be an inappropriate juror in response to one

question, she was actually biased against him, and no reasonable attorney would have

allowed her to sit on the jury.  Petitioner relies heavily on the Fifth Circuit's decision in

*Virgil v. Dretke*, 446 F.3d 598, 606–607 (5th Cir. 2006), to support his argument that it was not reasonable for trial counsel to allow Lopez—who Petitioner characterizes as admittedly and unambiguously biased in the state's favor—to be seated on the jury. Finally, he asserts that seating her was structural error, which precludes any need of a harm analysis and thus, requires automatic reversal.

### ii.    Respondent's Answer and Lopez's Voir Dire

In response, Respondent contends that Petitioner's arguments bypass the portions of Lopez's testimony that do not serve him and directs the Court to the entire record for context that underscores trial counsel's strategic reasons for seating her. The Respondent adequately summarized the relevant portions of Lopez's voir dire, *see* Dkt. No. 18 at 13–15, but the Court finds it useful to include the text of the relevant transcripts here:

> MR. WILKS:  What are some -- why is it that you don't feel like this would be a good jury for you?
>
> VENIREPERSON: I'm friends with the defendant's son.  I see him on a daily basis.
>
> MR WILKS: Okay.
>
> VENIREPERSON: And I think, on the State's side, I might know too many people involved from, like, investigators and detectives.
>
> MR. WILKS: Okay. And you're married to a police officer. Which one of the defendant's sons are you friends with?
>
> VENIREPERSON: His son Elijah.
>
> MR. WILKS: Okay.  And we'll talk about kind of who all might be involved here in a second. Do you know anyone has anyone ever discussed the facts of the case with you?
>
> VENIREPERSON: Just for my work purposes, the only thing I know, whenever he was arrested.
>
> MR. WILKS: Okay. Did - - but did somebody give you any information or talk to you about the case at all?

VENIREPERSON: No.

MR. WILKS: I mean, if you were put on this jury, would you be getting your information the same as the other 11 folks?

VENIREPERSON: (Moving head up and down.)

MR. WILKS: And real quick, I am going to kind of list through some people. Does anyone know Mr. John Johnson, Jr.?  His daughter Mia?  Iyana Johnson is also involved in this case. She's a young lady about five, I think, now.

He has sons: John Wayne, Ezechiel, Elijah.

. . . .

MR. WILKS: Okay. Coming back to you.  And just real fast too, we talked a little bit about Mr. Johnson's kids, but the main people who, along with those witnesses, those folks that will be witnesses in this case.  A Detective Bobby Collins, Detective Frank Shoemaker, Shawn Montgomery, Zach Hall, who is an APD officer. And those are people that might be called, and also Rachel Burch, who is a DNA analysis person with the UNT Health Science Center. Those are the people I anticipate the State would call as witnesses.  So just kind of keep that in mind, if y'all know some of those folks as well, and I'll come back to you.

So, Ms. Lopez, going back again, without telling us what it is, have people discussed the case with you?

VENIREPERSON: No.

MR. WILKS: Okay. Have you -- do you -- knowing who potential witnesses and everything are, do you think that you would be an appropriate juror?  Or do you think that you've already started forming opinions as to the credibility of some of those witnesses?

VENIREPERSON: I think I would be an inappropriate juror.

MR. WILKS: All right.  Well, I'm just going to leave it at that. And we may talk to you a little more, but I don't want to go into something that might be bad.

Dkt. No. 18-2 at 112–15; RR 2 at 34–35, 39–40.

THE COURT: Okay. Let's have Juror Number 10. That would be Stacie Lopez.

14

[Discussion regarding previously questioned Juror Number 21 being struck for cause]

(Venireperson entered the courtroom.)

THE COURT: Yes, how are you?

VENIREPERSON: I'm good. How are you, sir?

THE COURT: And you are Stacie Lopez, Juror Number 10?

VENIREPERSON: Yes.

THE COURT: And so what -- what is it about your knowledge of this case that you think you couldn't be fair and impartial?

VENIREPERSON: Well, I think because, as a journalist, we ran this story before on Mr. Johnson. And one of his sons actually threatened us too, and so we had to file a police report with that. So I don't know if that --

THE COURT : "He threatened us." Who is "us"?

VENIREPERSON: The news station.

THE COURT: The station, itself? Not you personally?

VENIREPERSON: Not me personally. But . . .

THE COURT: Did you personally feel threatened?

VENIREPERSON: Kind of. But, I mean, we filed a police report, and that was kind of as far as it went. And then I also know all of the investigators that will be involved because of my husband.

THE COURT: And you know the investigators that are involved?

VENIREPERSON: Yeah.

THE COURT: Okay. We really appreciate you coming in.

VENIREPERSON: Okay.

THE COURT: Do y'all have any questions of this lady?

MR. WILKS: I don't, Your Honor.

MR. GHANAYEM: No, Your Honor.

VENIREPERSON: No?

15

THE COURT: Just hold off a second. I'm going to let her go out.

(Venireperson exited the courtroom.)

THE COURT: Any objections for cause on Juror Number 10?

MR. WILKS: I don't, Your Honor.

MR. GHANAYEM: No, Your Honor.

Dkt. No. 18-2 at 116–18; RR 2 at 66–68.

So, based upon the record and the entirety of Lopez's voir dire, Respondent argues that it was reasonable for trial counsel to conclude that there was a possibility of bias in both directions. Respondent points to Fifth Circuit cases holding that trial counsel was not ineffective for seating a juror whose vague statements suggested—but did not definitively establish—bias. *See Torres v. Thaler*, 395 F. App'x 101, 107–09 (5th Cir. 2010); *White v. Quarterman*, 275 F. App'x 380 (5th Cir. 2008). Respondent further argues that what is clearly established for purposes of Section 2254(d)(1), then, is *Strickland* and its presumptions that trial counsel acted reasonably and that the "jury acted according to law." 466 U.S. 690, 695. In short, Respondent contends that the transcripts of voir dire tell a different story than Petitioner's and that rather than presenting an unequivocal admission that she leans toward law enforcement, she admitted she knew the State's detectives and investigators, but also admitted she was friends with Petitioner's son Elijah and spoke to him every day. Thus, given her two-directional potential for bias, Respondent asserts that trial counsel had good reason to seat her on the jury, and the TCCA was correct to reject Petitioner's ineffective-assistance claim.

Additionally, Respondent rebuts Petitioner's argument that he does not have to prove prejudice. *See Virgil*, 446 F.3d at 613 (refusing to "hold that a structural error alone is sufficient to warrant a presumption of prejudice in the ineffective assistance of counsel context"). And Respondent argues that Petitioner has not established that he was

prejudiced by Lopez's placement on the jury.    As a result, Respondent urges the Court to deny Petitioner's ineffective-assistance claim.

### iii.    Lopez's voir dire did not establish that she was unequivocally biased against Petitioner.

One of the foundations of our criminal justice system is that before a person's liberty can be deprived, guilt must be found, beyond a reasonable doubt, by an impartial decisionmaker. *See Virgil*, 446 F.3d at 605.  And the Sixth Amendment provides in part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed."  U.S. Const. amend.  VI.  In other words, the Sixth Amendment provides that the right to a fair trial guarantees the criminally accused a fair trial by a panel of impartial or "indifferent" jurors. *Irvin v. Dowd*, 366 U.S. 717, 722 (1961).

Decisions made by an attorney during voir dire are considered matters of trial strategy that are entitled to deference. *See Teague v. Scott,* 60 F.3d 1167, 1172 (5th Cir.1995). To prove that counsel was ineffective for failing to strike a potential juror, a petitioner must show that his lawyer was "obligated [ ] to use a[ ] for-cause challenge" because the juror was biased. *See Virgil* at 610.  These strategic choices "cannot be the basis for a claim of ineffective assistance unless counsel's tactics are shown to be so ill chosen that it permeates the entire trial with obvious unfairness." *Id.* (quotations and citations omitted).

As for whether the failure to strike an allegedly partial juror constitutes deficient performance, a court must first evaluate whether the juror at issue was actually biased. *Virgil*, 446 F.3d at 608–10.  The bias question centers on a juror's own indication that she has "such fixed opinions that [she] could not judge impartially [defendant's] guilt." *Siegfried v. Greer*, 372 F. App'x 536, 539 (5th Cir. 2010) (quoting *Patton v. Yount*, 467 U.S. 1025, 1035 (1984)).  The bias inquiry also evaluates whether the juror's "views would

prevent or substantially impair the performance of his or her duties as a juror in accordance with his or her instructions and oath." *United States v. Scott*, 159 F.3d 916, 925–26 (5th Cir. 1998). Impartiality is constitutionally satisfied if jurors can "lay aside [their] impression or opinion and render a verdict based on the evidence presented in court." *Irvin*, 366 U.S. at 723.

In keeping with these concerns, federal courts have repeatedly held that a defendant's right to an impartial jury does not mean that jurors who have preconceived notions cannot be validly seated. *See Thomas v. Lumpkin*, 995 F.3d 432, 444 (5th Cir. 2021); *Geralds v. Att'y Gen., Fla.*, 855 F. App'x 576, 597 (5th Cir. 2021) ("But this principle does not mean that jurors must have zero prior exposure to the facts and issues involved in a case."). The Supreme Court explained:

> To hold that the mere existence of any preconceived notion as to guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

*Irvin*, 366 U.S. at 723. The Fifth Circuit stressed that "[t]he reality is that the role of the juror in our government would be weakened if our system expected each juror to lack any real-world sense." *Virgil*, 446 F.3d at 609.

Petitioner's reliance on *Virgil* is misplaced because Lopez's voir dire testimony is easily distinguishable from the testimony of the potential jurors in *that* case. In *Virgil*, one prospective juror stated that "his relationship with law-enforcement officers would preclude him from serving as an impartial juror," while another stated that he could not be "fair and impartial" to the defendant, in a case involving an assault on an elderly person, because his mother had been mugged. 446 F.3d at 609–10. The Fifth Circuit held that both jurors were actually biased where they had "unequivocally expressed that they could not sit as fair and

impartial jurors." *Id.* at 613. But in this case, Lopez never said that her friendship with Petitioner's son, her marriage and relationship with law-enforcement officers, or knowledge of the case would keep her from being fair and impartial. At best, her ambiguous statements expressed uncertainty as to whether she would be an appropriate juror.

But ambiguous statements are not enough to demonstrate bias and, in turn, to obligate counsel to ask more questions or otherwise challenge a juror as biased. *Compare Virgil*, at 613, which found that "[jurors] unequivocally expressed [that they could not sit] as fair and impartial jurors," with *Flores v. Davis*, 734 F. App'x 278, 279 (5th Cir. 2018) (per curiam), which held that a venireperson's statement he "th[ought] his past experience as a crime victim 'would affect [his] ability to be fair' was an 'ambiguous statement . . . distinguishable from the responses deemed biased in *Virgil*,'" *cert. denied*, 139 S. Ct. 2671 (2019). And in *Torres v. Thaler*, 395 F. App'x 101, 107–08 (5th Cir. 2010), *cert. denied*, 562 U.S. 1230 (2011), the Fifth Circuit found that *Virgil* did not control petitioner's claims of juror bias where, unlike *Virgil*, the juror's "statements on the record during *voir dire* were vague" and "did not expressly indicate prejudice." Instead, the juror merely stated that "he thought his experiences would affect his impartiality," and he "would 'probably' be more for the State"; however, the juror provided no statement "definitively show[ing] he would not be impartial." Finally, in *Seigfried*, 372 F. App'x at 539–40, the Fifth Circuit found no bias where a prospective juror answered: "I honestly am not sure, but I think that I would . . . I really don't know," to the question of whether she would have a hard time applying the law. In short, ambiguous testimony is "not unusual on *voir dire* examination." *Patton*, 467 U.S. at 1025.

In summary, the Court finds that Lopez's statements are similar to those of the juror in *Seigfried*, in that even if her statements could be construed as "hint[ing] at possible bias

against [Petitioner], [Lopez] never explicitly stated that she could not be an impartial juror." 372 F. App'x at 540. And although the trial court specifically asked her what it was about her knowledge of the case she thought would make her think she couldn't be fair and impartial, her response about working at a news station that ran a story about Petitioner and subsequently received threats from one of Petitioner's sons was followed up with her admission that the threat was not against her personally, and she was only "kind of" personally threatened. *See* Dkt. No. 18-2 at 117. Again, Lopez never unequivocally stated that she could not be fair and impartial. Thus, the Court finds that her ambiguous statements were not enough to demonstrate bias, and counsel was not deficient for failing to strike her from the panel.

### iv.    Lopez's presence on the jury was not prejudicial.

Additionally, Petitioner offers nothing but conclusory statements to show that Lopez's seat on the jury caused a breakdown in the adversarial process or that it permeated his trial with obvious unfairness. *See Virgil* at 612 (citing *Strickland*, 466 U.S. at 691–92). Indeed, the Court finds that there is simply no reasonable or substantial likelihood of a different result had Lopez not been seated on the jury. This is so because the evidence of Petitioner's guilt—including the DNA evidence that he impregnated his daughter, his plea of guilty to the charge of prohibited sexual conduct with I.J., and extensive, corroborated testimony that he abused his daughter and her daughter (the product of his rape)—was overwhelming. In any event, the record supports the reasonable conclusion that trial counsel's decision to seat Lopez on the jury was a matter of reasoned trial strategy. Thus, Petitioner is not entitled to federal habeas relief on this ground.

**B.    Petitioner's claims fail to overcome AEDPA's relitigation bar.**

Petitioner also argues that because the TCCA never obtained affidavits from trial counsel and did not enter findings of fact and conclusions of law, it did not properly review his claim. But Petitioner raised his grounds for review in his state habeas proceedings, and the TCCA rejected them on the merits.[2] The TCCA's summary denial is entitled to substantial deference. *Richter*, 562 U.S. at 100–01. And, as thoroughly explained by Respondent, Petitioner has not met the demanding standard for overcoming that deference. Simply put, he has failed to show that the state court's ruling on his claims was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. *See id.* at 102.

In sum, Petitioner has failed to show that the state court's adjudication of his claims resulted in a decision contrary to clearly established federal law or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Thus, he is not entitled to federal habeas relief.

**4.    Conclusion**

For the reasons discussed above and based on the facts and law set forth in Respondent's answer, the Court finds Petitioner's claims should be denied.

The Court therefore orders:

(1)    The petition for writ of habeas corpus is denied and dismissed with prejudice.

(2)    All relief not granted is denied, and any pending motions are denied.

---

[2] Under Texas law, denial of a habeas petition, rather than a dismissal, signifies that the state habeas court's adjudication of claims was on the merits. *See Salazar v. Dretke,* 419 F.3d 384, 398–99 (5th Cir. 2005).

(3)     Under Rule 22 of the Federal Rules of Appellate Procedure and 28 U.S.C. § 2253(c), this Court finds that a certificate of appealability should be denied.  For the reasons set forth above and in Respondent's answer, Petitioner has failed to show that reasonable jurists would find (1) this Court's "assessment of the constitutional claims debatable or wrong," or (2) "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling."  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

The Court will enter judgment accordingly.

Dated September 12, 2025.

James Wesley Hendrix
United States District Judge

22